```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
United States of America,

                    Plaintiff,           CR-03-910 (CPS)

     - against -
                                         MEMORANDUM OPINION
Eugene Brumigin,                         AND ORDER

                    Defendant.
----------------------------------------X
```

SIFTON, Senior Judge.

Petitioner *pro se* Eugene Brumigin, a citizen of Guyana, pled guilty on November 24, 2004 to one count of conspiring to distribute marijuana, in violation of 21 U.S.C. § 846, and was sentenced to 12 months imprisonment. On October 31, 2005, immigration charges were filed by the Department of Homeland Security and petitioner was deported on December 9, 2006. Now before this Court is petitioner's application, dated October 27, 2006, to withdraw his plea of guilty and vacate his conviction, pursuant to a writ of error coram nobis, a writ of mandamus pursuant, 28 U.S.C. § 1651, and a writ of habeas corpus, 28 U.S.C. § 2255. For the reasons set forth below, petitioner's application is denied.

**Background**

The following facts are drawn from the parties' submissions in connection with this motion. Disputes are noted.

Petitioner is a citizen of Guyana who was admitted to the United States in 2000 as a Lawful Permanent Resident. In August 2003, petitioner was charged with a conspiracy to distribute and possess with intent to distribute cocaine base and marijuana.

On August 13, 2003, Donald D. duBoulay was appointed as petitioner's attorney. According to petitioner, on an unspecified date, duBoulay advised him that if he accepted a plea agreement, he would not be subject to "any deportation consequences" and would be "released immediately to his wife and children." (Mot. at 17). DuBoulay's explanation, according to petitioner, was that petitioner was "only pleading to 12 months imprisonment [which] cannot be consider [sic] a serious or aggravated offence." (Mot. at 5). According to petitioner, duBoulay knew of petitioner's immigration status and knew that petitioner was "extremely concerned" about avoiding deportation. (Id.).

According to duBoulay, in an affidavit submitted in connection with this application, he "never advised Mr. Brumigin that his plea of guilty and conviction in the case would not subject him to removal proceedings." (DuBoulay Affidavit ¶ 4).

On November 24, 2004, petitioner pled guilty before the undersigned, pursuant to a plea agreement. The plea agreement

listed "removal/deportation" as a penalty.[1]  At the plea colloquy, I told petitioner: "[I]f you plead guilty to this accusation, that could lead to your being removed or deported from the United States." (Transcript of Plea Colloquy at 10, Nov. 24, 2004 ("Tr")).  When asked if he understood, petitioner replied "Yes, your Honor." (Id. at 11).  After the plea was accepted, I asked the attorneys if there was an INS detainer, and stated, "[i]t is a situation where the defendant might well be sentenced to time served." Addressing defendant, I said, "You may simply go from, as you know, from the MDC or the MCC straight into the immigration facility . . . ." (Id. at 15).  On December 14, 2004, I sentenced petitioner to 12 months imprisonment and three years supervised release to follow.

On October 31, 2005, a Notice to Deportable Alien was mailed to the petitioner stating that petitioner was removable from the United States pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act. 8 U.S.C. § 1227(a)(2)(A)(iii).  A deportation warrant was issued on February 22, 2006, and deportation proceedings began on April 20, 2006.  On October 27, 2006, petitioner, proceeding *pro se*, filed the instant petition, which was received by the Court on November 6th, 2006. Petitioner was subsequently deported to Guyana on December 9,

---

[1] The agreement lists several statutory penalties including a maximum term of imprisonment of 20 years, supervised release, a maximum fine of $1,000,000, and "other criminal penalties: removal/deportation." (Plea Agreement at 1 - 2).

2006.

Petitioner argues that, had he properly been informed about the consequences of his guilty plea, he would have elected to go to trial rather than face deportation.

**Discussion**

Petitioner styles his application to withdraw his plea of guilty and vacate his conviction as an application "pursuant to a Writ of Error Coram Nobis, 28 U.S.C. § 1651, [and a] Writ of Habeas Corpus, Section 28 U.S.C. § 2255." (Mot. at 2).

It is settled law that a writ of habeas corpus may not be granted when the petitioner is no longer "serving the sentence of the conviction he seeks to vacate." *Burke v. U.S.*, 1992 WL 183752, at *1 n.1 (S.D.N.Y. 1992); *see* 18 U.S.C. § 2255 ("A prisoner *in custody* under sentence of a court . . . .") (emphasis added). The present application was filed on October 27, 2006, when petitioner was being held by the Bureau of Immigration and Customs Enforcement ("ICE"). Detention by ICE, while a consequence his conviction, is not "custody" under the federal sentence for the purposes of § 2255. *See Cisse v. U.S.*, 330 F.Supp.2d 336, 339-40, 342 (S.D.N.Y. 2004); *Adegbuji v. U.S.*, 2003 WL 21961122, at *3 (S.D.N.Y. 2004). However, when I sentenced petitioner, I also sentenced him to a three year period of supervised release. *See Adegbuji,* 2003 WL 21961122 at *2-3

(Petitioner serving period of supervised release is deemed to be "in custody" for purposes of § 2255).  So long as petitioner is serving a period of supervised release, even when petitioner is being held on immigration charges, he is properly deemed to be in custody "unless and until he is deported." *Chukwurah v. U.S.*, 813 F.Supp. 161, 163 (E.D.N.Y. 1993).  Moreover, petitioner's term of supervised release is to continue if he returns to the United States during its term. Accordingly, § 2255 appears to be a proper avenue for the relief sought by petitioner. *See U.S. v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000) ("[C]oram nobis has traditionally been used to attack convictions with continuing consequences when the petitioner is no longer 'in custody' for purposes of 28 U.S.C. § 2255."); *Taylor v. U.S. Bd. of Parole*, 194 F.2d 882, 883 (D.C.Cir. 1952) ("Mandamus . . . . cannot be used as a substitute for habeas corpus.")[2].

---

[2] Even if petitioner's application is deemed an application for a writ of coram nobis, that would not alter the outcome of this Court's decision. Coram nobis relief should be granted only to correct errors "of the most fundamental character where the circumstances are compelling to achieve justice." *Burke*, 1992 WL 183752 at *1 n.1  (quoting *U.S. v. Mandel*, 862 F.2d 1067, 1076 (4th Cir. 1988)).  "[T]o obtain coram nobis relief a petitioner must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming v. U.S.*, 146 F.3d 88, 90 (2d Cir. 1998)(internal quotation marks omitted).  As described below, petitioner has not satisfied the first prong of the requirements for coram nobis because he has not established that the circumstances surrounding his conviction denied him justice, nor has he satisfied the second prong since he has shown no reason why he could not have brought the petition while still serving his sentence.
  Nor can petitioner succeed under the writ of mandamus, which is only available when three conditions are satisfied: "first, the party seeking relief must have no other adequate means to attain the relief he desires, second, the petitioner must show that his right to the writ is clear and indisputable, and third, the issuing court must be satisfied that the writ is

-6-

I. Counsel's Advice on Deportation

Petitioner argues that duBoulay provided ineffective assistance by failing to inform him of the consequences of his plea on his immigration status. According to petitioner, such a failure constitutes ineffective assistance of counsel, rendering his guilty plea involuntary and denying him due process of law.

Petitioner's affidavit is, however, contradicted by petitioner's own statements at the plea hearing, during which he answered "yes" when the I asked him if he understood that he could be deported as a result of pleading guilty. His claim is further contradicted by duBoulay's affidavit[3]. Where a "court is faced with self-serving allegations that are contradicted by a credible affirmation by a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings." *Castrillo v. Breslin*, 2005 WL 2792399, at *13-14 (S.D.N.Y. 2005); *see also Thai v. U.S.*, 2007 WL 13416, at *6 (E.D.N.Y. 2007). Here, given the statements under oath by petitioner's attorney, petitioner's affirmation

---

appropriate under the circumstances." *Stein v. KPMG, LLP,* 486 F.3d 753, 759-760 (2d Cir. 2007) (internal quotation marks omitted). As described below, petitioner cannot satisfy the second or third prongs of this test.

[3] The truth of duBoulay's affidavit is supported by the fact that I engaged in a discussion with counsel and defendant about petitioner's deportation, during which neither petitioner nor duBoulay took exception to the Court's comments.

during the plea colloquy, and the absence of any evidence apart from petitioner's self-serving statements, I find that petitioner was not misinformed about the consequences of his plea. *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) (court has "responsibility to actually make a credibility finding in each case" though "in most circumstances a convicted felon's self-serving testimony is not likely to be credible").[4]

II. The Court's Advice on Deportation

Reading petitioner's application liberally, petitioner also argues that in using the word "could" during the plea colloquy to describe his deportation consequences (rather than "will" or similar language), I failed to convey to him that deportation was

---

[4] Even if petitioner was not fully informed of the deportation consequences of his plea, it is well-settled among the courts of this circuit that failure to advise a client of the deportation consequences of a guilty plea is not objectively unreasonable and does not constitute ineffective assistance of counsel. *U.S. v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002); *see also Taffe v. U.S.*, 2006 WL 3733301, at *1 (E.D.N.Y.2006); *Cuero-Flores v. U.S.*, 2005 WL 525534, at *2 (E.D.N.Y. 2005); *Anderson v. U.S.*, 2005 WL 1711925, at *1 (D.Conn. 2005); *Taylor v. U.S.*, 2004 WL 1857574, at *2 (S.D.N.Y. 2004); *Pujols v. U.S.*, 2004 WL 1418024, at *3 (S.D.N.Y. 2004).
To the extent that petitioner argues that duBoulay provided ineffective assistance of counsel due to his failure to investigate the "certainty of deportation," given the fact that counsel is not required to inform petitioner of the deportation consequences and the fact that duBoulay did not misinform petitioner, I can see no reason why the failure to investigate would constitute ineffective assistance. *See U.S. v. Abdelhadi*, 327 F. Supp.2d 587, 597 (E.D.Va. 2004) ("[D]efendant's allegation of ineffective assistance on the ground that defense counsel failed to investigate the immigration consequences of the plea was not sufficient because defense counsel was not obligated to inform defendant of the collateral consequences, i.e., deportation, of the plea."); *Halo v. U.S.*, 2007 WL 1299158, at *13 (E.D.N.Y. 2007) ("It is well settled that in preparing his client's case, 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'") (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)); *but see Janvier v. U.S.*, 659 F. Supp. 827, 829 (N.D.N.Y. 1987)(finding ineffective assistance where counsel did not know immigration consequences and made no effort to inform himself).

almost certain, rendering his plea involuntary. Though petitioner is correct in that I did not indicate, as I should have, that deportation was "virtually automatic [or] unavoidable", *Couto* 311 F.3d at 185, this error does not affect the voluntariness of petitioner's plea. The Second Circuit has held that "the mere failure of a district judge to warn a defendant of the possibility of deportation as a consequence of his plea does not...amount to a violation of constitutional due process." *U.S. v. Santelises*, 476 F.2d 787, 789 (2d Cir. 1973). While *Couto* called *Santelises* into question, it stopped short of requiring that district judges inform defendants of all deportation consequences, limiting its holding regarding the involuntariness of guilty pleas to cases where a defendant was affirmatively misled by counsel or the court. 311 F.3d at 190-91.

In the present case, my failure to inform petitioner that his deportation was virtually assured is not an affirmative misrepresentation prohibited by *Couto*. *See Zhang v. U.S.,* No. 05-6662-pr at 14-15 (2d Cir. October 23, 2007)(finding that statements that inform a defendant of "potential immigration consequences, and provide[] an opportunity to pursue those consequences. . . with his attorney or with an immigration specialist" are "all that is required"); *Adebayo v. U.S.*, 2005 WL 383553 at *3 (E.D.N.Y. 2005)(where the court told defendant that deportation was a "possibility", a claim that the plea was involuntary "must fail since courts are not even required to

advise defendants of the possibility of deportation based on a guilty plea."); *but see U.S. v. Singh*, 305 F.Supp.2d 109 (D.D.C. 2004)(vacating a plea and sentence where court advised defendant that his plea "*could* result in [his] deportation")(emphasis added). 401 F.Supp.2d at 243.[5] In *Zhang*, the Second Circuit held that the District Court's similar "statements were not a full elaboration of the immigration consequences of a guilty plea, but they were not misleading or prejudicial in any way." No. 05-6662-pr at 15 (2d Cir. October 23, 2007). At petitioner's plea colloquy, I discussed petitioner's transfer to an immigration facility and inquired about an INS detainer. The Second Circuit had cautioned that such discussions would be discouraged if a plea were rendered involuntary whenever a judge gave less than the fullest possible explanation of any immigration consequences.[6] *Id*.

In light of these circumstances, I find that petitioner received sufficient notice of his deportation consequences at the

---

[5] The facts pertinent to the present application are distinguishable from those of *Singh*, where the record shows that the AUSA compounded the judge's error. *Singh*, 305 F.Supp.2d at 113 (finding AUSA misinformed defendant in saying that he would have a "meaningful hearing before deportation would occur"). Neither duBoulay or the prosecutor made any misleading statements to the effect that deportation was uncertain.

[6] "To hold a sentencing court that has decided to address the topic to a higher standard of detail in explaining possible immigration ramifications -- a notoriously complex and constantly shifting area of law -- would likely have the perverse effect of encouraging sentencing courts simply to avoid the issue entirely, lest a reviewing court find a statement to be, in retrospect, misleading." *Id.* at 15.

colloquy and that his plea of guilty was voluntary.[7]

## Conclusion

For the reasons set forth above, petitioner's application is denied. The Clerk is directed to transmit a copy of the within to all parties.

SO ORDERED.

Dated :   Brooklyn, New York
         November 7, 2007

                By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge

---

[7] The government has also argued that even if petitioner's claims had substantive merit, they are barred by the one-year period of limitation for motions pursuant to § 2255, because petitioner knew or should have known that he was misinformed by counsel and this Court as of the date of the plea colloquy. *See Wims v. U.S.*, 225 F.3d 186, 188 (2d Cir. 2000). I need not decide that issue other than to note that the alleged misinformation could arguably have led petitioner to fail to investigate the exact nature of his deportation until he was actually alerted that he was going to be deported on October 31, 2005.